Guillermo A. Escobedo (SBN 206198)
Lara P. Besser (SBN 282289)
William A. Llamas (SBN 341087)
JACKSON LEWIS P.C.
225 Broadway, Suite 1800
San Diego, California 92101
Telephone:   (619) 573-4900
Facsimile:    (619) 573-4901
Guillermo.escobedo@jacksonlewis.com
Lara.besser@jacksonlewis.com
William.llamas@jacksonlewis.com

Attorneys for Defendant
AMENTUM SERVICES, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO LAFON, and on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>         v.<br><br>AMENTUM SERVICES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br><br>         Defendants | Case No.: **'23 CV 1037 DMS JLB**<br>[*Transferred from San Diego County Superior Court Case Number* 37-2023-00016985-CU-OE-CTL]<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>**(CAFA & Diversity Jurisdiction)**<br><br>*[Filed concurrently with Declarations of Mark Esposito, Micki Matcham and Guillermo A. Escobedo; Request for Judicial Notice; Civil Cover Sheet; Corporate Disclosure Statement; Notice of Parties with Financial Interest; Notice of Filing of Answer in State Court]*<br><br>State Court Complaint filed: 4/24/2023<br>Case Removed: June 2. 2023 |

NOTICE OF REMOVAL OF ACTION
Case No.

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant AMENTUM SERVICES, INC. ("Defendant" or "Amentum") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §1332(d) (the Class Action Fairness Act "CAFA") and 28 U.S.C. §1441(Diversity), thereby removing the above-entitled action from the Superior Court of the State of California in and for the County of San Diego (the "Superior Court") to the United States District Court for the Southern District of California (the "District Court").

The following statement of grounds for removal is submitted pursuant to the provisions of Section 1446.[1]

## I. **PROCEDURAL BACKGROUND**

1.     On April 24, 2023 Plaintiff Marco Lafon ("Plaintiff") filed a Complaint in the Superior Court of California, County of San Diego entitled *LAFON v. AMENTUM SERVICES, INC., and DOES 1 through 10, inclusive*, Case No. 37-2023-00016985-CU-OE-CTL (the "State Court Action"). A true and correct copy of the Complaint filed by Plaintiff in the State Court Action is attached to the Declaration of Guillermo A. Escobedo ("Escobedo Decl.") as **Exhibit "A."** (Escobedo Decl., ¶ 2.) *See also* 28 U.S.C. § 1446(a).

2.     On May 3, 2023, Defendant was served with a copy of the Summons, Complaint, Demand for Jury Trial, Notice of Case Assignment and Case Management Conference, Notice of E-Filing Requirements and Imaged Documents, Alternative Dispute Resolution Information, and Stipulation to Use Alternative Dispute Resolution. (Escobedo Decl., ¶ 3, and **Exhibit "A"**.)

3.     Defendant is informed and believes that it is the only named defendant in the State Court Action and that no other party has been properly joined or served with the Complaint in the State Court Action (Escobedo Decl., ¶ 4.) *See also* 28 U.S.C. § 1446(2)(A) ("all defendants who have been properly joined and served must join in and consent to the

---

[1]     All subsequent references to "Section" are to Title 28 of the United States Code.

removal of the action.")

4.      In the Complaint, Plaintiff alleges thirteen causes of action for: (1) Failure to Pay Overtime Wages in Violation of Labor Code §§510 and 1198; (2) Failure to Pay all Wages and Minimum Wages in Violation of Labor Code §§1182, 1194, 1197, 1198; (3) Failure to Provide Meal Periods in Violation of Labor Code §§226.7, 512, 516, and 1198; (4) Failure to Comply with Cal. Labor Code §§6300 *et. seq*.; (5) Failure to Timely Furnish Accurate Itemized Wage Statements in Violation of Labor Code §226(a); (6) Failure to Timely Pay Wages During Employment in Violation of Labor Code §204; (7) Waiting Time Penalties Pursuant to Labor Code §§201, 203; (8) Failure to Reimburse Business Expenses in Violation of Labor Code §2802; (9) Failure to Provide Sick Pay in Violation of Labor Code §246; (10) Failure to Provide Fresh Drinking Water pursuant to Labor Code §2441; (11) Failure to Provide Suitable Seating in Violation of Labor Code §1198; (12) Failure to Adopt Standards that Minimize Excessive Indoor Heat in Violation of California Labor Code §§ 6720, 226.7; and (12) Violation of Business & Professions Code §17200 *et. seq*. (Escobedo Decl., ¶ 2, Exh. "A".)

5.      On June 1, 2023, Defendant filed and served its Answer in the State Court Action. A true and correct copy of Defendant's Answer filed in the State Court Action is attached to the Escobedo Decl. as **Exhibit "B."** (Escobedo Decl., ¶ 6.) Exhibits "A" and "B" constitute all the pleadings that have been filed in the State Court Action as of the filing of this Notice of Removal. (Escobedo Decl., ¶ 6.)

## II.      **TIMELINESS OF REMOVAL**

6.      This Removal is timely because it is being filed within thirty (30) days after Defendant was served with a copy of Plaintiff's Summons and Complaint, on May 3, 2023. (Escobedo Decl., ¶ 3; and Exhibit "A.")

7.      This Removal is, therefore, filed within the time period mandated by Section 1446(b), since the deadline to remove is June 2, 2023. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (holding the thirty-day removal deadline is triggered by actual service of the complaint); Fed R. Civ. Proc. 6.

NOTICE OF REMOVAL OF ACTION
Case No.

## III.    VENUE

8.    "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

9.    This action was initially filed in the Superior Court in the County of San Diego, which sits within the Southern Judicial District of California. 28 U.S.C. §§ 84(d) ("The Southern District comprises the counties of Imperial and San Diego. Court for the Southern District shall be held at San Diego."). Thus, for purposes of Removal, venue properly lies in this District Court.

## IV.    NOTICE TO SUPERIOR COURT AND ADVERSE PARTIES

10.    As required by Section 1446(d), a copy of the Notice of Removal is being filed in the State Court Action. A true and correct copy of Defendant's Notice of Removal filed in California Superior Court in and for the County of San Diego is attached to the Escobedo Decl. as **Exhibit "C."**  (Escobedo Decl., ¶ 7.)

11.    As also required by Section 1446(d), Defendant is serving Plaintiff, the only adverse party, and the Superior Court with this Notice of Removal, and will affirm such in a Declaration of Service. (Escobedo Decl., ¶ 7.)

## V.    PLAINTIFF'S ALLEGATIONS

12.    The Complaint alleges that Plaintiff brings this action on behalf of himself and a putative class of California citizens ("Class Members") consisting of: "Plaintiff Class: All persons who have been, or currently are, employed by Defendants and who held, or hold, job positions which Defendants has (sic) classified as 'non-exempt' employees in the State of California, at any time since four years prior to filing this action, through the date judgment is rendered in this action." (the "Class Period").  (Escobedo Decl. ¶ 2, Ex. A ¶ 61.)

13.    Plaintiff also seeks to certify a waiting time subclass of: "Terminated Sub Class: All members of the Plaintiff Class whose employment ended during the Class

NOTICE OF REMOVAL OF ACTION
Case No.

Period. (Escobedo Decl. ¶ 2, Ex. A ¶ 62.)

14.    The Complaint names the "defendants" as "Amentum Services, Inc., a Delaware Corporation; and DOES 1 to 10, inclusive". (Escobedo Decl. ¶ 2, Ex. A.)

15.    Plaintiff alleges that common questions of law and fact as to the Class Members predominate over any questions affecting only individual members, including, but not limited to, the following:

> a.    Whether Plaintiff and Class Members are subject to and entitled to the benefits of California wage and hour statutes; (*Id.* ¶ 64(a).)
>
> b.    Whether Defendant failed to pay Plaintiff and Class Members for all hours worked; (*Id.* ¶ 64(b).)
>
> c.    Whether Defendant failed to pay Plaintiff and Class Members all overtime; (*Id.* ¶ 64(c).)
>
> d.    Whether Defendant had a standard policy of not providing compliant meal breaks and premiums to Plaintiff and members of the Plaintiff Class; (*Id.* ¶ 64(d).)
>
> e.    Whether Defendant had a standard policy of not providing drinking water; (*Id.* ¶ 64(e).)
>
> f.    Whether Defendant had a standard policy of not providing Plaintiff and members of the Plaintiff Class with sick pay at the regular rate; (*Id.* ¶ 64(f).)
>
> g.    Whether Defendant failed to provide Plaintiff and the Plaintiff Class with a safe working environment; (*Id.* ¶ 64(g).)
>
> h.    Whether Defendant unlawfully and/or willfully failed to provide Plaintiff and members of the Plaintiff Class with true and proper wage statements upon payment of wages, in violation of Labor Code section 226; (*Id.* ¶ 64(h).)
>
> i.    Whether Defendant unlawfully and/or willingly failed to timely pay Plaintiff and the Plaintiff Class during employment; (*Id.* ¶ 64(i).)

NOTICE OF REMOVAL OF ACTION
Case No.

j. Whether Defendant unlawfully maintained an excessively hot working environment; (*Id.* ¶ 64(j).)

k. Whether Defendant unlawfully and/or willingly failed to timely pay Plaintiff and the Terminate Sub Class upon termination; (*Id.* ¶ 64(k).)

l. Whether Defendant failed to reimburse Plaintiff and members of the Plaintiff Class for business-related expenses; (*Id.* ¶ 64(l).)

m. Whether Plaintiff and members of the Plaintiff Class sustained damages, and if so, the proper measure of such damages, as well as interest, penalties, costs, attorneys' fees, and equitable relief; (*Id.* ¶ 64(m).)

n. Whether Defendant's conduct as alleged herein violates the Unfair Business Practices Act of California (Bus. & Prof. Code, §§ 17200 *et. seq.*) (*Id.* ¶ 64(n).)

## VI. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

16. Plaintiff brings this action as a putative class action.[2]  Removal based upon the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 because (1) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs; (2) the aggregate number of putative class members in all proposed classes is 100 or greater; and (3) diversity of citizenship exists between at least one putative class member and the named defendants in this matter. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089–90 & n.2 (9th Cir. 2010).  Although Defendant denies Plaintiff's factual allegations and denies that Plaintiff and/or the Class Members he purports to represent are entitled to the relief requested, all requirements for jurisdiction under CAFA have been met in this case.

---

[2] Defendant denies that this action can properly proceed as a class action.  Defendant reserves the right to contest at the appropriate time.

**A.     The Putative Class Has More Than 100 Members.**

17.     To remove under CAFA, the aggregate number of putative class members in all proposed classes must be greater than 100.  28 U.S.C. §§ 1332(d)(2) & (5)(B); *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 & n.2 (9th Cir. 2010).  Plaintiff's Complaint defines the putative classes in this action as "All persons who have been, or currently are, employed by Defendants and who held, or hold, job positions which Defendants has (sic) classified as 'non-exempt' employees in the State of California, at any time since four years prior to filing this action, through the date judgment is rendered in this action" ("Class Period"). (Escobedo Decl. ¶ 2, Ex. A ¶ 61.) The Complaint also defines a waiting time subclass as "All members of the Plaintiff Class whose employment ended during the Class Period." (*Id.* ¶ 62.)

18.     Amentum employed in excess of 3,000 full-time hourly employees in California during the Class Period.  (Declaration of Micki Matcham "Matcham Decl." ¶ 4.)  Accordingly, there are more than 3,000 putative class members in the proposed class here.

**B.     Diversity of Citizenship Exists.**

19.     To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2)(a) (under CAFA's minimal diversity requirements, diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *United Steel*, 602 F.3d at 1089–90 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

20.     "An individual is a citizen of the state in which he is domiciled. . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the

NOTICE OF REMOVAL OF ACTION
Case No.

lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  The Complaint alleges that Plaintiff is a resident of the State of California.  (Escobedo Decl. ¶2, Ex. A at ¶ 13.)  Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes.  Moreover, Plaintiff has brought claims on behalf of putative class members residing in the State of California.  (*Id.* ¶ 61.)  Thus, at least one putative class member is a citizen of California for diversity jurisdiction purposes.

21.    For diversity purposes, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  *See* 28 U.S.C. § 1332(c); *Hertz Corp v. Friend*, 559 U.S. 77, 92-93 (2010).  With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test."  *Id. at* 80-81.  Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control, and coordinate the corporation's activities.  *Id.*  A corporation can only have one "nerve center."  *Id.* at 93-94.  In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state.  *Id.*

22.    Diversity of citizenship is determined "as of the time the complaint is filed and removal is effected."  *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).

23.    Plaintiff alleges he is a resident of the State of California. (Compl. ¶13.)  Amentum was, at the time of filing of the Complaint, and still is, a corporation formed under the laws of the State of Delaware. (Declaration of Mark Esposito ("Esposito Decl."), ¶ 2.)  As such, Amentum is a citizen of Delaware because it is incorporated in that state.

24.    Amentum's principal place of business since its inception through February 27, 2023 has been Germantown, Maryland, as its executives and administrative offices were located there.  On February 27, 2023, Amentum moved its headquarters to Chantilly, Virginia.    C-suite executive and administrative offices are located at company headquarters, and the majority of executive and administrative functions are directed,

NOTICE OF REMOVAL OF ACTION
Case No.

controlled, and coordinated from there. (Esposito Decl. ¶ 3.) Therefore, Amentum is also a current citizen of the State of Virginia.

25.    It is not necessary for DOES 1 through 20 to join in this removal as they have been sued under fictitious names, have not been served or received the Summons or the Complaint, and, under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal and are not proper parties in this Court. Defendant is unaware of any other party being joined or served in this matter (Escobedo Decl. ¶ 4.)

26.    Accordingly, at least one member of the putative class is a citizen of a state different from Amentum.  As a result, diversity jurisdiction exists under CAFA.  28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

### C.    The Amount in Controversy Exceeds $5,000,000.

27.    Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).  Plaintiff may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum.  *See Standard Fire Ins. Co. v. Knowles*, 586 U.S. 588, 590 (2013) (class-action plaintiff's stipulation that he and the class would seek less than $5 million in damages "does not defeat federal jurisdiction under CAFA").  Because Plaintiff has not expressly pled a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000.  *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) ("[w]here the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds [the jurisdictional requirement]".

28.    Defendant's burden to establish the amount in controversy is the preponderance of the evidence standard.  *Dart Cherokee Basin Operating Co, LLC. v. Owens*, 574 U.S. 81, 88-89 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d

NOTICE OF REMOVAL OF ACTION
Case No.

1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases).  A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.  "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."  Senate Judiciary Report, S. REP. 109–14, at 42 (2005) (citation omitted); *See also Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993 (9th Cir. 2022) (overturning district court ruling for imposing - both explicitly and in its analysis – a presumption against CAFA jurisdiction contrary to *Dart Cherokee*.)

29.    A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations."  *Oda v. Gucci Am., Inc.*, Case No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *see Sanchez v. Russell Sigler, Inc.*, Case No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. U.S. LEXIS 55667, at *5 (C.D. Cal. Apr. 28, 2015). ("[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.") (citation omitted); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy").  The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what defendants could actually owe.  *LaCross*, 775 F.3d at 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted).

30.    Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations.  *Roa v. TS Staffing Servs., Inc.*, Case No. 2:14-cv-08424-ODW (MRW), 2015 U.S. Dist. LEXIS 7442, at *4-5 (C.D. Cal. Jan. 22,

2015).  CAFA's requirements are to be tested by real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F. 3d at 1198.

31.    When the amount in controversy is not clear from the face of the complaint, courts have routinely acknowledged "weekly violation rates" are reasonable assumptions of class damages where Plaintiff has vaguely alleged "pattern and practice" violations, as Plaintiff has done so here. (Compl., ¶¶3-12; *See Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO-SSx, 2017 U.S. Dist. LEXIS 90131, *17 (C.D. Cal. June 12, 2017) (denying remand where Defendant assumed a weekly violation rate to meet its burden establishing the amount in controversy for claims of unpaid minimum and overtime wages, meal and rest break violations and waiting time penalties after offering evidence regarding the putative class's workweeks, number of employee, and average pay, and where Plaintiff broadly asserted claims resulting from Defendant's systematic policies and practices and failed to offer any evidence to contravene Defendant's evidence); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (holding a weekly-violation-rate calculation reasonable when complaint alleges defendants maintained a "policy or practice" of both meal and rest break violations); *Mackall v. HealthSource Global Staffing, Inc.*, No. 16 cv—03810-WHO, 2016 U.S. Dist. LEXIS 119292, *4 (N.D. Cal. Sept. 2, 2016)(finding one hour of overtime per period of employment reasonable where allegations were "regular" or "pattern and practice' violations); *Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019 MMM (MRWx), 2015 U.S. Dist. LEXIS 130521, *9 (C.D. Cal. Sept. 25, 2015)(finding one-violation-per-week assumption reasonable where allegation was of "pattern and practice" of denying meal and rest periods); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648-49 (9th Cir. 2012)(reasoning that when a complaint alleges routine and regular violations, defendant is reasonable to assume a rate of one violation per week); *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500, 2012 U.S. Dist. LEXIS 27215, 2012 WL 699465, at *5-6 (N.D. Cal. Mar. 1, 2012) (examining how the complaint informs what is a reasonable amount-in-controversy calculation and holding that a "policy" of violations

NOTICE OF REMOVAL OF ACTION
Case No.

permits a defendant to assume one violation per week).)

32.    In fact, numerous courts have found that under the "pattern and practice" category of allegations, violation rates between 25% to 60% are reasonable. *See Castillo v. Trinity Servs. Grp., Inc.*, No. 19-cv-01013-DAD, 2020 U.S. Dist. LEXIS 119963, at *7 (E.D. Cal. July 8, 2020) (citing cases); *see, e.g.*, *Elizarraz v. United Rentals, Inc.*, No. 18-cv-09533-ODW, 2019 U.S. Dist. LEXIS 62065, 2019 WL 1553664, at *3-4 (finding a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods reasonable based on "pattern and practice" allegations); *Oda v. Gucci Am., Inc.*, No. 2:14-cv-07468-SVW, 2015 U.S. Dist. LEXIS 1672, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate reasonable based on "pattern and practice" allegations); *see also Zamora v. Penske Truck Leasing Co., L.P.*, 20-cv-02503-ODW, 2020 U.S. Dist. LEXIS 147960, 2020 WL 4748460, at *5 (C.D. Cal. Aug. 17 2020) (finding that 10% violation rate was reasonable).

33.    As detailed below, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.

34.    Although Defendant denies Plaintiff's factual allegations and denies that Plaintiff or the class is entitled to any relief, Plaintiff's allegations have put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[3]

35.    Plaintiff alleges that Amentum committed thirteen distinct categories of unlawful conduct as to Plaintiff and all Class Members, continuously over a four-year period.

---

[3] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendant's references to potential damage amounts based on Plaintiff's allegations are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims is without merit and that Defendant is not liable to Plaintiff or any putative class member. In addition, Defendant denies that liability or damages can be established on a classwide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability." *Lewis v. Verizon Commcn's., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

NOTICE OF REMOVAL OF ACTION
Case No.

***Meal Period Violations***

36.    Plaintiff's Third Cause of Action, the claim for alleged failure to provide meal periods, exceeds the $5,000,000 threshold alone, as follows:

a.    Plaintiff alleges each Class Member was denied meal periods because of Defendant's "uniform" practices and procedures which failed to provide them meal breaks after their fifth hour of work. (Compl., ¶¶3, 6, 34-35.)

b.    During the putative Class Period (April 24, 2019 through the present), Amentum employed in excess of 3,000 full-time non-exempt employees in California ("Putative Class Members"). (Matcham Decl. ¶ 4.)

c.    The Putative Class Members worked at least five days a week, 8 hours per day, 40 hours per week for at least 89% of their shifts. (*Id.* at ¶ 5.)

d.    Pursuant to California Labor Code § 226.7, 512 and IWC Order No. 1-2001, § 11, an employee that works an eight-hour shift is entitled to one unpaid meal period of at least 30 minutes duration. An employer that fails to provide a meal period is liable to the aggrieved employee for one hour of pay at the employee's regular rate as a statutory penalty.

e.    The Putative Class Members worked at least 1,575,300 shifts during the putative Class Period. (*Id.*)

f.    Accordingly, if it were proven that Defendant implemented a "company-wide policy" of failing to provide members of the class with meal periods after they worked five hours, as alleged in Paragraphs 6 and 34 of the Complaint, Defendant would purportedly incur liability for at least 89% of all shifts worked by the putative Class Members over the four-year Class Period.

g.    Throughout the Class Period, all of Amentum's hourly employees in the State of California were paid between $14.66 per hour to $197.10

13

per hour.  (*Id.* at ¶ 6.)

    h.    Taking the weighted average of the putative Class Members' rates of pay, which is $42.67 per hour (*Id.*), Plaintiff's allegation indicates, if proven, a purported total that well exceeds the $5,000,000 in controversy requirement for CAFA jurisdiction.

    i.    If we assumed a conservative and appropriate violation rate of 10% of Class Member shifts resulting in alleged Meal Break violations, it results in an alleged amount of **$6,721,805.10** for this claim.

37.    Accordingly, this <u>single</u> component (alleged denial of meal periods) of Plaintiff's alleged damages for meal break violations surpasses the $5,000,000 in controversy requirement for CAFA jurisdiction.

### ***Failure to Pay Minimum and Overtime Wages***

38.    Plaintiff also seeks damages on behalf of himself and the putative class for alleged failure to pay overtime and minimum wages because of Defendants "company-wide practices and/or policies." (Compl., ¶4.) Specifically, Plaintiff asserts "Defendant maintained practices across its locations which have failed and continue to fail to pay Plaintiff and other non-exempt employees all wages." (*Id.*)  Specifically, Plaintiff asserts Defendant did not pay Plaintiff and other non-exempt employees overtime wages because they work "nine (9) hours per shift Monday through Thursday and eight (8) hours on Fridays, so that the following week they can take Friday off. However, the days in which they worked nine (9) hours, overtime was not paid." (Compl., ¶5.) Essentially, Plaintiff is arguing that he and the other non-exempt employees are being under paid four (4) hours of overtime per week, by only being paid the regular rate of pay.

39.    Plaintiff further asserts "off-the-clock" wage claims arising from the following - that Defendant did not pay employees all wages due to rounding the hours Class Members worked to the nearest hour; and that during the Covid-19 Pandemic, Defendant forced the putative Class Members to take their temperatures off-the-clock before they could clock in, resulting in unpaid minimum and overtime wages.  Finally,

NOTICE OF REMOVAL OF ACTION
Case No.

Plaintiff alleges that Defendant failed to pay sick pay and vacation wages at the regular rate of pay. (Compl., ¶¶ 4, 29-33.)

40. Plaintiff does not specify the frequency of these other alleged violations in the Complaint. (*Id.*) Given the Complaint's limited information and the fact minimum wage and overtime violations are alleged to have occurred as a "pattern and practice," it is reasonable for Defendant to assume to estimate the damage exposure – based on the Complaint - that each employee of the putative class worked one hour of overtime a week. See *Francisco*, 2017 U.S. Dist. LEXIS 90131, *18-19; *see also Zamora v. Penske Truck Leasing Co., L.P.*, 20-cv-02503-ODW, 2020 U.S. Dist. LEXIS 147960, 2020 WL 4748460, at *5 (C.D. Cal. Aug. 17 2020) (finding that 10% violation rate was reasonable)."

41. Plaintiff's First and Second Causes of Action, the claims for alleged failure to pay minimum and overtime wages, exceed the $5,000,000 threshold as well for the following reasons:

a. The Putative Class Members worked over 354,000 workweeks during the Putative Class Period. (Matcham Decl. at ¶ 4.)

b. The weighted average hourly rate of pay of the putative Class Members is $42.67. (*Id.* at ¶6.)

c. The overtime rate of pay is calculated by multiplying $42.67 by 1.5. (See Cal. IWO 4-2001, §3(A)(1).)

d. Given the Putative Class Members worked at least 8 hours per day, 40 days per week for over 89% of their shifts, any alleged unpaid work time would be required to be paid at the overtime rate of pay. (*Id.* at ¶ 5.)

e. With respect to Plaintiff's "off-the-clock" wage claims, using the reasonable assumption of 15 minutes of estimated unpaid overtime a week – which is far below even a 10% violation rate which Courts have deemed a reasonable assumption of the amount of controversy in cases with similar "policy and practice" allegations - the amount in controversy for Plaintiff's wage/overtime "off-the-clock" claims is at a

15

minimum **$5,040,960.00**. [4]   This amount does not even include the alleged underpayment of Sick Pay and vacation pay.

     f.   Additionally, Plaintiff asserts he and the Putative Class Members were not paid 4 hours of overtime work per week.  Even if a one-hour-per week rate was applied (as opposed to four hours per week), the amount in controversy for that separate claim exceeds $5,000,000.00.[5]

42.   Accordingly, these two components (alleged unpaid wages/overtime wages) of Plaintiff's alleged damages for wage violations also alone surpass the $5,000,000 in controversy requirement for CAFA jurisdiction.

### ***Wage Statement Violations***

43.   Additionally, Plaintiff seeks damages on behalf of himself and the Putative Class Members for alleged failure to furnish wage statements in compliance with Labor Code section 226(a) due to facial violations with the wage statements in that they did not correctly list all categories of information required by section 226(a), including: "gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages and meal period premiums, and the corresponding number of hours worked at each hourly rate." (Compl., ¶ 36.) Additionally, Plaintiff asserts derivative penalties for all pay periods in which Defendant did not record the correct gross and net wages earned on the Class Members wage statements due Defendant's alleged policy of not paying for the time Plaintiff and Class Members spent working off-the-clock, rounded hours worked, and failed to pay overtime wages. (Id. ¶¶ 37-39.)

44.   Plaintiff's Fifth Cause of Action, the claim for alleged failure to provide

---

[4] 354,000 Class Member workweeks x $16.00 (15 minutes of alleged unpaid off-the-clock overtime work per week calculated by multiplying the weighted average hourly rate of pay for the Class Members ($42.67) x 1.5 (overtime rate of pay multiplier) x 0.25 (1/4 of an hour)) x 89% = $5,040,960.00 in alleged unpaid wages in controversy for Plaintiff's minimum wage and overtime claim.

[5] 354,000 Class Member workweeks x 1 hours of alleged unpaid overtime per week x 0.5 overtime differential x $42.67 (the weighted average hourly rate of pay for the Class Members) = $7,552,590.00 in alleged unpaid wages in controversy for Plaintiff's overtime claim.

NOTICE OF REMOVAL OF ACTION
Case No.

Complaint Wage Statements, also adds to satisfying the $5,000,000 threshold, for the following reasons:

    a.    Penalties for violating Labor Code section 226(a) are $50 for the initial violation, and $100 for each subsequent violation, up to a maximum of $4,000. Cal. Lab. Code §226(e).

    b.    From April 24, 2022 through the present - the time period relevant for the claim of inaccurate wage statements (the putative "Wage Statement Sub Class") - Defendant employed at least 2,025 non-exempt employees, and issued over 50,134 wage statements to those employees. (Matcham Decl. at ¶ 8.)

    c.    None of the employees in the putative Wage Statement Sub Class worked more than 40 pay periods during the relevant time period for the Wage Statement Sub Class. As such, none would be eligible to receive the maximum penalty amount of $4,000.00 for this claim should Plaintiff allegations be proven. (*Id.*)[6]

45.    However, given that this claim is derivative of the others outlined above, Plaintiff's allegations suggest that, if the other claims asserted above are proven, Plaintiff's alleged damages for wage statement violations would reasonably approach or exceed the $5,000,000 in controversy requirement.

### ***Waiting Time Penalties***

46.    Plaintiff also seeks damages on behalf of himself and the Putative Class Members for alleged failure to timely pay final wages, or otherwise pay waiting time penalties to the Terminated Sub Class. Specifically, Plaintiff asserts Defendant failed to pay Plaintiff and the Sub Class Members all wages earned, including overtime and minimum wages, and meal period premiums, at the time of discharge or within 72 hours of their leaving Defendant's employ. (Compl., ¶ 40.) In essence Plaintiff has asserted this

---

[6] 2,025 initial wage statements issued to Putative Class Members in the putative "Wage Statement Sub Class" x $50 = $101,250. Plus, 48,109 remaining wage statements x $100 = $4,810,900, for a total of **$4,912,150.**

NOTICE OF REMOVAL OF ACTION
Case No.

claim as derivative of his wage and meal period claims asserted above.

47.    Plaintiff's Sixth Cause of Action, the claims for alleged failure to provide Waiting Time Penalties, exceed the $5,000,000 threshold as well for the following reasons:

a.    Penalties for violating Labor Code sections 201 and 203 ("Waiting Time Penalties") are calculated at the employee's daily rate of pay times the number of days in which the employee was not paid, up to a maximum of 30 days. Cal. Lab. Code §§201-203.

b.    From April 24, 2000, to through the present (the Putative Waiting Time Sub Class period) at least 1,259 non-exempt employees' employment was terminated at least 30 days prior to the lawsuit being filed. (Matcham Decl. at ¶7.)

c.    Thus, the Waiting Time Penalties alleged in controversy is the full 30-day penalty for at least 1,259 non-exempt employees in the Putative Waiting Time Sub Class.

d.    The weighted average hourly rate of pay for the Putative Waiting Time Sub Class Members is $36.10. (*Id.* at ¶7.)

e.    The Putative Class Members worked an average of 8 hours per day, 40 days per week.  (*Id.* at ¶5.)

f.    Thus, average daily rate for the Putative Waiting Time Sub Class is $288.80.

g.    Multiplying the average daily rate for the Putative Waiting Time Sub Class Members by 30 days for all 1,259 non-exempt employees whose employment was terminated at least 30 days prior to the filing of this Notice of Removal, results in an amount above the $5,000,000 requirement.[7]

48.    Accordingly, this <u>single</u> component (alleged Waiting Time Penalties) of

---

[7] 1,259 Putative Waiting Time Sub Class Members x $36.10 average rate of pay x 8 hours per day x 30 days = $10,907,976.00 in Waiting Time penalties alleged owed to the Waiting Time Sub Class.

18

Plaintiff's alleged damages for failure to timely pay wages surpasses the $5,000,000 in controversy requirement for CAFA jurisdiction.

### *Failure to Reimburse Claim*

49.    Plaintiff also seeks damages for failure to reimburse business expenses and unfair competition, among other claims.  These alleged damages further contribute to the amount in controversy and reinforce the conclusion that the $5,000,000 threshold is met.

### *Attorneys' Fees and Costs*

50.    Finally, Plaintiff seeks his attorneys' fees and costs (Escobedo Decl. ¶2, Ex. A, Prayer for Relief pg. 33). In CAFA cases, "a court must include future attorneys' fees recoverable by statute . . . when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018.) Labor Code sections 226, 218.5 and 1194, among other Labor Code sections alleged to have been violated in Plaintiff's Complaint, authorize an award of attorneys' fees to a prevailing plaintiff on claim for violations of Labor Code sections 226, 203, 510, and 1194. Cal. Code §§226, 203, 510, & 1194; *Betancourt v. OS Restaurant Services, LL,* 83 Cal. App. 5th 132 (Cal. App. 2022). Although Defendant denies Plaintiff's claim for attorneys' fees, for purposes of removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages as the amount of attorneys' fees.  *In re Quintus Sec. Litig*., 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). Using the benchmark rate of twenty-five percent of the potential damages to calculate attorneys' fees should Plaintiff be successful on his class claims would add significantly to Plaintiff's claims. This additional amount places the amount in controversy in this action well above the CAFA threshold.

51.    Alternatively, a court may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1131 (2001). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011)

NOTICE OF REMOVAL OF ACTION
Case No.

(emphasis added) (internal citation omitted)."The Court determines a reasonable fee award using the lodestar method, which calculates a reasonable award by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Barkett v. Sentosa Props. LLC,* No. 1:14-CV-01698-LJO, 2015 WL 5797828, at \*4 (E.D. Cal. Sept. 30, 2015) (citing *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir. 2013) and *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir.2008)). In setting a rate, courts may rely on, *inter alia,* affidavits submitted by counsel, *see, e.g., Blum v. Stenson,* 465 U.S. 886, 898 (1984); *United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990); awards in comparable cases, *Nadarajah v. Holder,* 569 F.3d 906, 917 (9th Cir. 2009) (finding that courts may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience); and its "own knowledge of customary rates and [] experience concerning reasonable and proper fees." *Fritsch,* 899 F.3d at 795.

52.     Applying the lodestar method, based on extensive experience of Defense Counsel, plaintiff's attorneys in San Diego County charge between $500 to $800 per hour, and would likely expend at least 300 hours to prosecute cases similar to Plaintiff's claims *through mediation only*, plus incur an additional 250 hours if the matter were to proceed through trial.   (Escobedo Decl. ¶¶ 8-16.) Based on Mr. Escobedo's experience and Plaintiff's allegations, it could be expected that attorneys' fees alone in this case could exceed $300,000.00 if Plaintiff were successful on his claims. (*Id.*; *see also e.g.*, Request for Judicial Notice, Exhibits 1-5.) Using the lodestar method of the potential damages to calculate attorneys' fees should Plaintiff be successful on his class claims would also add significantly to Plaintiff's claim.

53.     This additional amount of attorneys' fees should Plaintiff succeed on his claim places the amount in controversy in this action well above the CAFA threshold.

54.     Based on the foregoing, all requirements for CAFA removal are satisfied, and removal is proper.

///

NOTICE OF REMOVAL OF ACTION
Case No.

## VII.    REMOVAL BASED ON DIVERSITY JURISDICTION

55.    The Complaint and all causes of action alleged therein may be properly removed on the basis of diversity jurisdiction, in that this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(a), 1441.

### A.    Complete Diversity Exists Between Plaintiff and Defendant

56.    For purposes of determining diversity of citizenship, an individual is deemed a citizen of the state in which he is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A plaintiff's place of residency is evidence of his domicile absent affirmative allegations to the contrary. *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) ("The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary."); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (noting a party's residence is *prima facie* evidence of his domicile); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("the place of residence is *prima facie* the domicile").

57.    Plaintiff is now, and at the time this action commenced, a citizen of the State of California within the meaning of U.S.C. section 1332(a). Plaintiff's Complaint affirmatively alleges that at all material times he was and is a resident of the State of California. (*See* Complaint, ¶ 13.)  Therefore, Plaintiff's residence and domicile are, and were, located within the State of California.  (Sinatra Decl., ¶ 5; *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain . . .").)

58.    For purposes of diversity, a corporation is considered a citizen of any state in which it is incorporated and where it has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend* 559 U.S. 77, 93 (2010).

59.    At all relevant times, Defendant has been and is a corporation duly created, incorporated, and organized under the laws of the State of Delaware (Esposito Decl., ¶ 2) Amentum was headquartered in Germantown, Maryland until February 27, 2023, when it

NOTICE OF REMOVAL OF ACTION
Case No.

moved its headquarters to Chantilly, Virginia.  (Esposito Decl., ¶ 2) The State of Virginia is Defendant's corporate "nerve center," as Defendant's C-suite executive and administrative offices are located at company headquarters.  Additionally, the majority of executive and administrative functions are directed, controlled, and coordinated from there. (*Id.*)

60.    Thus, both at the time this action was commenced and the time it was removed to federal court, Defendant is either a citizen of the State of Delaware or the State of Virginia within the meaning of Section 1332(c)(1), because it was at all times a corporation formed under the laws of the State of Delaware, with its principal place of business and corporate headquarters located in the State of Virginia.  Given that Defendant is not incorporated in California, and is not headquartered in California, <u>Defendant is not a citizen of California</u>.

61.    Pursuant to Section 1441(b)(1), the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity of citizenship between the parties to an action.  *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding "[T]he district court was correct in only considering the domicile of the named defendants").  Defendant is informed and believes, and on that basis asserts, that no other defendant in this action has been properly joined and served as provided in Section 1441(b)(2).

62.    Accordingly, complete diversity exists between Plaintiff and Defendant in accordance with section 1332(a).

**B.    The Amount in Controversy Exceeds the $75,000 Jurisdictional Minimum**

63.    Without conceding that Plaintiff is entitled to damages or can recover damages in any amount whatsoever, the amount in controversy in this action exceeds $75,000 exclusive of interest and costs.  28 U.S.C. §1332(a).  Plaintiff's Complaint does not specify an amount in controversy.  Where a plaintiff's state court complaint is silent as to the amount of damages claimed, the United States Supreme Court has held "a

defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," but the statement need not contain evidentiary submissions. *See Dart Cherokee*, 574 U.S. at 82, 89. If plaintiff contests a defendant's allegations, defendant need only demonstrate by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996); *Williams v. Best Buy Co.,* 269 F.3d 1316, 1319 (11th Cir. 2001) (courts may consider factual statements in defendant's notice of removal in assessing removal jurisdiction).

64.    In assessing the amount in controversy, this Court may, for removal purposes, look to the removal papers and the pleadings, as well as summary judgment-type evidence. *Chavez v. JP Morgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 908 (9th Cir. 2005); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). The ultimate inquiry is what amount is placed "in controversy" by the Complaint and not the amount that a defendant would owe if the plaintiff prevails. *Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 401 (2010); s*ee also Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe. It's a question as to what is in controversy."). The "amount in controversy is simply an estimate of the total amount in dispute." *Lewis*, 627 F.3d at 400.

65.    In determining the amount in controversy, the Court must presume the plaintiff will prevail on each and every one of his or her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) ("a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint"), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"), superseded by statute on other grounds by 29 U.S.C. § 1446, and *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by

NOTICE OF REMOVAL OF ACTION
Case No.

reasonable reading of the value of the rights being litigated").

66. Attorney's fees also may be taken into account to determine the jurisdictional amount. *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945; *see also, Alvarado v. Home Depot U.S.A., Inc.*, Case No. 18-cv-611-MMA(NLS), 2018 U.S. Dist. LEXIS 95435, at *7-10 (S.D. Cal. June 5, 2018) (post-removal attorney fees are included in the amount in controversy).

67. In the event Plaintiff prevails on every one of his claims, he stands to recover the following:

    a. Failure to pay overtime pursuant to California Labor Code §§ 510 and 1198 and applicable Wage Order. Plaintiff claims he was required to work nine (9) hours per shift Monday through Thursday and eight (8) hours on Fridays, so that the following week he can take Friday off. (*See* Compl. ¶ 5.) For purposes of Plaintiff's unpaid overtime claim, Plaintiff alleges four (4) overtime hours per week in unpaid overtime. Plaintiff's approximate overtime rate of pay was at least $34.33 per hour (1.5 times the regular rate). (Matcham Decl. ¶ 10) At two hours per week, Plaintiff stands to recover $73.02 per week in alleged unpaid overtime. Plaintiff worked for Defendant from approximately December 4, 2015, to January 17, 2023. There are 52 workweeks in any given year, and assuming Plaintiff worked 50 out of the 52 eligible workweeks over the past four (4) years of employment, this equals a total of 200 eligible workweeks. Accordingly, Plaintiff's potential recovery under this claim is approximately **$27,464**.

    b. Plaintiff also alleges "off the clock" claims arising from purported rounding and unpaid temperature check time. (Compl, ¶¶4, 29-33). Using a reasonable assumption of one hour estimated unpaid overtime per week, Plaintiff stands to recover at least $34.33 per week in the "off-the-clock" claim. Over the course of 50 weeks per year, over a four year

NOTICE OF REMOVAL OF ACTION
Case No.

period, this equals a total of **$6,866**.

c. Liquidated damages pursuant to Labor Code § 1194.2. An employer that fails to pay the minimum wage fixed by an order of the commission or statute, an employee is entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Plaintiff stands to recover $27,464 in unpaid overtime wages, a minimum wage fixed pursuant to statute, and liquidated damages equal to that amount plus interest. Accordingly, Plaintiff's potential recovery under this claim is approximately **$30,210.40** ($27,464 + $2,746.40 [10% interest].).

d. Failure to provide meal periods pursuant to California Labor Code § 226.7, 512, 516, and IWC Order No. 1-2001, §§ 11. (*See* Compl. ¶ 92-93.) Plaintiff's rate of pay with Amentum was at least $22.89 per hour. (Matcham Decl. ¶ 10) Plaintiff worked at least five days per week, eight hours per day, 40 days per week, at least 89% of his shifts. (Matcham Decl. ¶5, 10) Assuming Plaintiff worked 50 out of the 52 eligible workweeks over the past four (4) years of employment, this equals a total of 200 eligible workweeks. For purposes of Plaintiff's unspecified claim, a conservative estimate of two (2) missed meal periods per week is a reasonable estimate. Accordingly, Plaintiff's allegation that he was denied meal periods during this time results in **$9,156** in alleged meal break premiums (200 workweeks x $22.89 x 2 meal period premiums per week).

e. Failure to provide accurate wage statements pursuant to California Labor Code § 226 and IWC Wage Order No. 1-2001, § 7. An employer that fails to furnish accurate wage statements is liable for the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee

NOTICE OF REMOVAL OF ACTION
Case No.

for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000). At all relevant times, Amentum paid Plaintiff bi-weekly. (Esposito Decl. ¶5.) Plaintiff is entitled to recover a $50 penalty for the first purported violation, and $100 for each subsequent violation over the one-year statutory timeframe (19 pay periods during that time frame). As such, his total recovery for this claim may be **$1,950**.

f. Failure to pay wages due upon separation of employment pursuant to California Labor Code § 201, 202, and 203. An employer that fails to pay all wages due to an employee upon discharge is liable for one day's wages for every day of delay, up to a maximum of 30 days. Plaintiff claims he was not paid all overtime wages due. (*See* Compl. ¶ 132.) As a full-time employee, Plaintiff worked no less than 80 hours every pay period, and his final hourly rate of pay was $24.34. (Esposito Decl. ¶5) At plaintiff's straight time rate of $24.34 per hour, the average daily wage is $194.72. Accordingly, Plaintiff's potential recovery under this claim is approximately **$5,841.60** ($194.72 x 30 days).

g. Failure to reimburse necessary business expenditures pursuant to California Labor Code § 2802 and related Wage Orders. Under California law, a plaintiff may recover the total amount of reimbursable expenses incurred by the employee plus interest. Plaintiff is a former employee of Defendant and Plaintiff claims he was not reimbursed for use of his personal cell phone and the purchase of steel-toe boots. For purposes of Plaintiff's unspecified claim, a conservative estimate of twenty-five dollars ($25) per month in unreimbursed cell phone expenses is a reasonable estimate. Similarly, a conservative estimate of $125 per year in unreimbursed steel-toe boot expenses is a reasonable estimate. Accordingly, Plaintiff's potential recovery under this claim is

NOTICE OF REMOVAL OF ACTION
Case No.

approximately **$1,700.00** ($25 cell phone expense x 48 months; and $125 steel-toe boot expenses per year x 4 years).

h.   Failure to provide paid sick days pursuant to California Labor Code §§ 245, 246, and 248.5. Under California law, employers are subject to penalties consisting of the dollar amount of paid sick days withheld from the employee multiplied by three, or two hundred fifty dollars ($250), whichever is greater, but not to exceed an aggregate penalty of four thousand dollars ($4,000) if paid sick days are unlawfully withheld. Plaintiff's claim for failure to provide paid sick days claims that Defendant failed to pay Plaintiff sick pay at the correct rate. (*See* Compl. ¶ 142.)  Plaintiff's claims do not include further specificity as to the duration of these violations, and therefore, assuming the violations occurred over the last four years of Plaintiff's employment, Plaintiff's potential recovery under this claim cannot exceed an aggregate penalty of **$4,000**.

i.   Plaintiff also seeks his attorneys' fees.  Plaintiff may recover attorney's fees to the extent he seeks the recovery of alleged unpaid wages. While Defendant denies Plaintiff's claim for attorneys' fees, for purposes of removal, Plaintiff's prayer puts at least another **$85,000** in controversy simply as to Plaintiff's individual claims (not including the class claims).  (Escobedo Decl. ¶ 11, 16.)

68.   Accordingly, the amount in controversy in this action for purposes of traditional diversity is **over $86,000, plus at least another $86,000 in attorneys' fees**, which far exceeds the jurisdictional minimum of $75,000.

///

///

///

///

27

## VIII.  **CONCLUSION**

69.    For the reasons stated above, this Court has jurisdiction under 28 U.S.C. sections 1332 and 1441.

70.    Defendants, therefore, may remove the State Court Action to this Court pursuant to 28 U.S.C. section 1441. Defendants respectfully request that this Court exercise its removal jurisdiction over this entire action under 28 U.S.C. sections 1332 and 1441.

Dated:  June 2, 2023                          JACKSON LEWIS P.C.

                                         /s/ *Guillermo A. Escobedo*

                              By: _____
                                    Guillermo A. Escobedo
                                    Lara P. Besser
                                    William A. Llamas
                                    Attorneys for Defendant
                                    AMENTUM SERVICES, INC.

4862-9731-6200, v. 3

NOTICE OF REMOVAL OF ACTION
Case No.